**William and Doris PORTER, Plaintiffs-Respondents,**

v.

**Gregory FITCH, Defendant,**

**and**

**Raymond Page, Defendant-Appellant.**

**No. WD 38269.**

Missouri Court of Appeals, Western District.

Feb. 24, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 31, 1987.

H. William McIntosh, Kansas City, for defendant-appellant.

Lyle Louis Odo, Platte City, for plaintiffs-respondents.

Before PRITCHARD, P.J., and MANFORD and BERREY, JJ.

BERREY, Judge.

This appeal is from a judgment rendered in the Circuit Court of Platte County, Missouri, in favor of William and Doris Porter, plaintiffs-respondents, and against Gregory Fitch, defendant, and Raymond Page, defendant-appellant, for damages arising from a trespass to realty and the destruction of an oak tree. Reversed and remanded.

Defendant Fitch operated a lawn care service and was hired by Kathryn Jetmore Foster, a defendant in the original action,[1] in June 1983, to perform specific yard work on her property. Her property consisted of approximately 3.75 acres abutting plaintiffs' property from the northwest. There are no markers or fences between these two properties.

Shortly after defendant Fitch began working for Mrs. Foster, in the course of discussing various tasks to be done on her property for the summer, Mrs. Foster mentioned the possibility of having a tree cut down in September 1983. Mrs. Foster pointed in the general direction where the tree stood. In September, defendant Fitch and Mrs. Foster had another conversation concerning the removal of a tree she believed to be dead; however, no firm commitment was reached regarding its removal.

Approximately two weeks after the last conversation with Mrs. Foster, defendant Fitch contacted Raymond Page, the appellant, to help him fell the tree. Fitch stated that Page would be compensated in half the amount of firewood gained from the felled tree.

On October 12, 1983, defendant Fitch and appellant Raymond Page and his former wife Marilyn Page, a defendant in the original action, arrived at the Foster property. They drove the truck to an area on the northwest side of an oak tree. Appellant Page asked defendant Fitch if he was certain this was the tree to be removed and

---

1. At the time the cause was filed, defendant Foster went by the name of Kathryn Jetmore. Prior to trial, Kathryn Jetmore married Merle Foster and will be referred to in this opinion by the name of Foster.

defendant answered: "Yeah; it's the deadest tree." Defendant Fitch testified that the oak tree had no leaves and the limbs were rotten.

Appellant Page then proceeded to fell the tree with his chain saw. After the tree was down and appellant had begun cutting firewood, plaintiff Doris Porter came out of her house and told defendant Fitch the tree was on her property. Subsequently, plaintiff William Porter, Doris Porter's husband, came to the area and told them to stop all activity which they did.

Evidence offered at trial revealed the location of the tree to be on Porter's property. Defendant Fitch admitted Mrs. Foster had pointed out the boundaries of her property and that he had never cut the Foster's lawn beyond the grass pattern already established. He stated he never cut the grass near or around the oak tree.

There was no dispute that defendant Fitch and appellant Page did not have the Porter's permission to enter onto their land and cut down their oak tree.

The Porters testified that although the tree had one dead branch, it was alive in the spring and summer of 1983, and provided a great deal of shade. This testimony was supported by Jana Krull, a friend of the Porters who mowed their lawn, Jane Hoover, a neighbor, and Loy Downing, another friend of the Porters who shares a garden on the Porters' property. All three testified the tree had growth and was alive in 1983.

Mr. John Cazzell, owner of Four Seasons Lawn Care, testified the tree was from 80 to 100 percent leafed out in the spring, summer, and fall of 1983. He stated he observed the tree on October 12, 1983, after it was felled, and saw sap still oozing from the trunk where it had been cut; he stated this was an indication that it was alive.

Plaintiffs' expert Dr. Gustov Van Der Hoeven, testified that based on the climatological data from the month of October 1983, the Porters' oak tree and other trees in the area had begun to go into dormancy. He opined that due to heavy wind and rain occurring on October 11, 1983, and the probability that the tree was in the state of dormancy, the oak tree sustained a great loss of leaves prior to October 12, 1983, the date the tree was cut. He stated he could not testify whether the tree was alive or not based on the information currently available.

Merle Foster, Mrs. Foster's husband, testified that the oak tree was dead. Defendant Fitch, former defendants Foster and Marilyn Page and appellant all stated the tree was dead when it was cut.

Plaintiffs brought an action for statutory trespass under Section 537.340, RSMo 1978, against Fitch, Foster, and Marilyn and Raymond Page. At the close of the plaintiffs' evidence, the trial court directed verdicts in favor of Foster and Marilyn Page. The case was submitted to jury as to the other two defendants, Fitch and Raymond Page, and the jury returned a verdict in favor of plaintiffs for $5,200. Upon a motion by plaintiffs, the trial court entered an order trebling the damages pursuant to § 537.340. Page filed this appeal; however, Fitch did not join in the appeal.

■ Appellant alleges prejudicial error in the submission of the verdict directing Instruction No. 8:

Your verdict must be for Plaintiffs and against the Defendant, Raymond W. Page, if you believe:

Defendant, Raymond W. Page, intentionally entered upon Plaintiffs' property without lawful authority.

because it fails to set forth the necessary elements needed to establish liability under § 537.340 for statutory trespass. Appellant's contention is correct.

Section 537.340, RSMo 1978, reads, in part, as follows:

Trespass on realty—treble damages RECOVERABLE, when

"If any person shall cut down, injure or destroy or carry away any tree placed or growing for use, shade or ornament, ... on the land of any other person, ... the person so offending shall pay to the party injured treble the value of the things

so injured, broken, destroyed or carried away, with costs."

A cause of action brought under this penal statute differs from a cause of action brought under common law trespass, *Harris v. L.P. and H. Construction Co.*, 441 S.W.2d 377, 382 (Mo.1969); *Crews v. Tusher*, 651 S.W.2d 677, 679 (Mo.App.1983); *Hunter Land and Development Co. v. Caruthersville Stave and Heading Co.*, 223 Mo.App. 132, 9 S.W.2d 531, 533 (Mo.App. 1928); *King v. Sligo Furnace Co.*, 190 S.W. 368, 370–371 (Mo.App.1916). Under common law, a trespass is the unlawful entry on another man's ground causing damage, however slight. *Mawson v. Vess Beverage Co.*, 173 S.W.2d 606, 613 [8–10] (Mo.App.1943). Plaintiff's instruction taken from the case of *Sullivan v. KSD/KSD–TV*, 661 S.W.2d 49, 50 (Mo.App. 1983), coincides with that principal of law. The *Sullivan* court stated "[a]ll that was necessary under the trespass verdict director submitted in this case as Instruction No. 7 was a finding of intentional unauthorized entry upon plaintiff's land...." *Id.* at 51.

Although the line of demarcation between the above principle and statutory trespass is fine, *Hunter Land and Development Co. v. Caruthersville, supra*, 9 S.W.2d at 533, it is necessary that instructions, not in MAI, i.e., statutory trespass, substantially follow the substantive law. *McNamee v. Garner*, 624 S.W.2d 867, 868 (Mo.App.1981); *see also Holliday v. Jackson*, 21 Mo.App. 660, 671–673 (1886). In *McNamee v. Garner, supra*, the plaintiff asserted that trespassing in the land was not a required element for recovery under § 537.340. The court found it was required and held the following instruction to be proper:

"Your verdict must be for the Defendant on Count I and Count II of Plaintiffs' Petition unless you believe that the Defendant did trespass on the land of the plaintiffs enter in and cut down trees growing on the land of the plaintiffs on or about September 1977 and September 1978; that Defendant had no right or

interest in the trees; and that Plaintiffs sustained damages thereby."

*Id.* at 868.

■ Here, defendant argues the instruction failed to include the pertinent language from the statute, "any tree placed or growing," and was thereby prejudiced because the issue of whether the tree was alive and growing was a highly contested issue in the case. Plaintiffs argue that the disjunctive word "or" eliminates the need for the jury to find the tree was "growing" so long as the jury could find it was "placed" for use, shade, etc. Defendant asserts this was already an undisputed fact.

It is difficult to understand how a tree "placed" for shade would not be growing. Statutory trespass attempts to redress plaintiff for his injury that often has intangible qualities, i.e., aesthetic value, and such damages are often difficult to measure. *See generally*, Dobbs, *Remedies* §§ 5.1, 5.2, 5.5, p. 310–24, 348 (1984). This would only hold true if the tree was thriving. Where it becomes a factual dispute, the resolution lies within the province of the jury. Thus, it was error to fail to instruct the jury in accordance with § 537.-340. The judgment of the trial court is therefore reversed and the cause is remanded for a new trial.

All concur.